**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Karla Feliciano, a Special Agent with the Department of Homeland Security Investigations, hereinafter referred to as HSI, being duly sworn, depose and state as follows:

## BACKGROUND

1. I am a Special Agent with the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and have been so employed since December 2024. Prior to HSI, I have been employed by the Department of Homeland Security in different capacities since November 2018, these capacities include United States Border Patrol PRPB Agent, United States Customs and Border Protection Officer and United States Immigration and Customs Enforcement Deportation Officer. I am an investigative law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for crimes involving violations of Title 18, Title 8, and Title 19 of the United States Code and to execute warrants issued under the authority of the.

2. I successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I received training in conducting criminal investigations, methods of investigation, and criminal investigations involving computers and different access devices.

3. I completed the HSI Special Agent Training Program in FLETC Glynco, Georgia. For approximately twelve (12) weeks I was extensively trained in academic and practical applications in financial crimes, drug trafficking, weapons, human trafficking, child exploitation, document and identity fraud, immigration and other offenses.

4. I am familiar with the statutes of the United States Code, and as a federal law enforcement officer, I have participated in investigations, surveillance, interviews, interrogations, arrests, and searches that have led to seizures of narcotics, firearms, and other contraband.

5. The facts and information contained in this affidavit are based on my personal knowledge, as well as upon information received in my official capacity from other individuals, including other federal and state law enforcement officers. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint charging 8 U.S.C. §§ 1324(a)(1)(A) & (v)(I) (Conspiracy to Bring In, Transport, and/or Harbor Certain Aliens) and 8 U.S.C. §§ 1324(a)(1)(A) & (v)(II) (Brining In, Transporting, and/or Harboring Certain Aliens; Aiding and Abetting). I have set forth only the facts that I believe are necessary to establish probable cause to support this criminal complaint.

## FACTS IN SUPPORT OF PROBABLE CAUSE

6. On the afternoon of November 9, 2026, a Puerto Rico Police Bureau (PRPB) agent assigned to the Culebra District was near the pier in the Playa Larga area of Culebra, Puerto Rico. From a distance, the PRPB agent observed four individuals near a vessel moored at the pier. As the agent moved closer to the area, the agent observed a white taxi arriving at the location.

7. The PRPB agent then observed a fifth individual disembark from the moored vessel. The individual was described as having long hair and wearing a gray long-sleeved shirt and black shorts. The agent further observed a female, described as having Asian features, exit the white taxi and walk toward the five individuals near the pier. The female subsequently returned to the taxi accompanied by three of the individuals, who were also described as having Asian features. The three individuals entered the taxi.

8. The female then returned to the pier area and handed a black package to one of the two remaining individuals. The PRPB agent described that individual as a heavyset male wearing a gray long-sleeved shirt and blue denim shorts. The male immediately placed the black package in his pocket.

9. The PRPB agent consensually approached the remaining group, which consisted of two males and one female with Asian features. The agent asked the male who had received the package to remove it from his pocket and place it on the sand. The agent then asked the individuals where they had arrived from. The individuals stated that they had arrived from St. Croix. The agent asked whether they had reported their entry to U.S. Customs and Border Protection (CBP) Air and Marine Operations (AMO). The individuals stated that they did not know they were required to do so. The PRPB agent contacted CBP-AMO agents, and CBP-AMO advised that the individuals were to remain at the location pending CBP-AMO arrival.

10. CBP-AMO agents subsequently checked the white taxi and conducted immigration-status verifications of its occupants. The driver of the taxi was identified as a United States citizen. Upon further inspection, the CBP-AMO agents determined that the remaining three occupants of the taxi were Chinese nationals who lacked lawful immigration status to be present and/or remain in the United States. The three Chinese nationals which did not talk either Spanish or English.

11. The vessel used to transport all of the individuals involved was a white with blue accent Pro-Line, Serial Number: PLCWJ054J203, named HAPPINESS FOREVER. After further law enforcement checks it was verified that the vessel was registered to Jianxin Huang (hereinafter

referred to as "HUANG") with address in Brooklyn, New York. Record checks also revealed that HUANG is a Legal Permanent Resident ("LPR") who resides in the state of New York.

12. Among the detained subjects in Culebra, there were two U.S. citizens identified as Carlos Muñoz (hereinafter referred to as "MUÑOZ") and Enrique Velasquez (hereinafter referred to as "VELASQUEZ"). In addition, there were three Chinese nationals with no legal status in the United States, as well as one Chinese national with Legal Permanent Resident status, later identified as Jinhua Zhou (hereinafter referred to as "ZHOU").

13. HSI New York special agents informed their HSI counterparts in Puerto Rico that the registered owner of the vessel, HUANG, was to fly from St. Thomas, USVI, to San Juan, Puerto Rico. CBP Officers detained HUANG at the San Juan International Airport upon arrival when he went through customs inspection area. HUANG Arrived at the airport through Cape Air and the arrival was at 1820 AST. According to a receipt that was in HUANG's possession, the vessel HAPPINESS FOREVER is registered in Puerto Rico.

14. Six individuals from the vessel incident were detained for further investigation. This included MUÑOZ, VELASQUEZ, and ZHOU, as well three Chinese aliens with no legal status in the United States. During the post detention interviews the following information was obtained:

a. VELASQUEZ: VELASQUEZ was advised of his Miranda rights and agreed to continue talking to the agents without a lawyer present. VELASQUEZ identified the Registered owner of the vessel as the organizer (identify HUANG in a picture from a photo line-up that was shown to him). VELASQUEZ was the custodian of the vessel while the organizer was not around. VELASQUEZ stated he had met the

with HUANG in St Croix. HUANG gave them the instruction on what they had to do. VELASQUEZ stated MUÑOZ and him took the boat from St Croix to St Thomas for the purpose of smuggling illegal aliens to Culebra, PR. VELASQUEZ claimed he had received two hundred US Dollars for fuel of the vessel. VELASQUEZ stated the money received for the smuggling event was going to be divided between MUÑOZ and himself. Additionally, VELASQUEZ knew where to go in Culebra due to HUANG sending the coordinates to MUÑOZ. When they arrive at Culebra a white caravan (Taxi) shows up with a driver and a Chinese female who he identifies as ZHOU. ZHOU approaches them and she gives MUÑOZ a black bag with money. VELASQUEZ did not know what amount of money was in the bag, but MUÑOZ knew how much was in the bag. Everything in the bag was going to be half and half between MUÑOZ and himself. VELASQUEZ confirmed he knew he was committed by human smuggling. VELASQUEZ is currently wanted by the St Croix local authorities for burglary second degree grand larceny and destruction to other's property.

b. MUÑOZ: MUÑOZ was advised of his Miranda rights and agreed to continue talking to the agents without a lawyer present. MUÑOZ identified the registered owner of the vessel as HUANG and claimed he was the organizer of the smuggling event. MUÑOZ met HUANG in St Thomas. VELASQUEZ and himself went from St. Croix to St Thomas and HUANG was the one who brought the three illegal aliens to them so they can transport the three illegal aliens to Culebra, PR. MUÑOZ confirmed that he had coordinated to get paid approximately between $7,000 to

$7,500 USD for the smuggling event. MUÑOZ stated he received the black bag with the money. MUÑOZ stated the money received for the smuggling event was going to be divided between VELASQUEZ and himself, half and half. MUÑOZ claimed he had received $200 USD for fuel of the vessel. MUÑOZ identified ZHOU and HUANG through pictures.

c. Both USCs MUÑOZ and VELASQUEZ were shown a picture of the vessel mentioned above which is the one used for the smuggling event and both positively identified it as the one they were in and used for the smuggling event.

d. The Chinese illegal aliens identified the captains of the vessel as the two USCs present.

e. One of the Chinese illegal aliens identified ZHOU as one of the organizers of the smuggling venture.

15. HUANG: HUANG was advised of his Miranda rights in his native language. He stated he understood them, signed them, and agreed to answer questions without a lawyer present. HUANG stated he had organized everything to smuggle the illegal aliens into the United States. HUANG stated he had purchased the vessel and kept it with VELASQUEZ who he referred to as "PAPI". HUANG stated he had fueled the vessel and given $200 USD to the captains for their personal needs like food and drinks during the trip.

16. The black package or bag that ZHOU gave to MUÑOZ in Culebra, which was observed by the PRPB agent before approaching the group, contained $8,316.00 USD in cash.

## CONCLUSION

17. Based on my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that there is probable cause that on or about November 9, 2026, in the District of Puerto Rico, the defendants HUANG, ZHOU, VELASQUEZ and MUÑOZ, knowingly conspired to and did bring, transport and/or harbor three illegal aliens to the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A), (v)(I), and (v)(II).

I declare that the foregoing is true and correct to the best of my knowledge.

KARLA T FELICIANO RIVERA
Digitally signed by KARLA T FELICIANO RIVERA
Date: 2026.11.10 23:21:14 -05'00'

**Karla Feliciano-Rivera**
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 7:34 am on this 11th day of November, 2026.

Digitally signed by Hon. Giselle López-Soler

**Hon. Giselle Lopez-Soler**
UNITED STATES MAGISTRATE JUDGE
PUERTO RICO DISTRICT COURT